### THE ST. LOUIS and THE ROBERT HADDON.

(Circuit Court of Appeals, Second Circuit. February 7, 1901.)

#### No. 49.

COLLISION—TOW AND STEAMSHIP.

A tug was proceeding up the North river opposite the berth of an ocean steamship, with two vessels in tow at about midchannel. The tow was making against the ebb tide about three knots an hour. It is customary for ocean steamships backing from their berths to proceed out into the middle of the river to give room to straighten on their course. The steamship had signaled her intention to back out, and the men on the tug could have discovered that she was backing out when 1,400 feet below the steamship's berth, but they made no change in the speed or the course of the tug. The steamship did not observe the tug until it had passed about 300 feet beyond the steamship's course, when its engines were put to go ahead and her sternway checked, but the steamship's stern struck the second vessel of the tow. *Held*, as it was seven or eight minutes after the steamship commenced to back out before the collision, the tug had ample time to protect her tows from collision, and was liable for the injury.

Appeal from the District Court of the United States for the Southern District of New York.

Le Roy S. Gane, for appellant.

H. G. Ward, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The court below adjudged both the steamship and the tug in fault for the collision by which the tow of the latter was injured, and, the owner of the steamship not having appealed, the only question in this court is whether the tug was in fault. As no opinion was delivered in the court below, we do not know what

view of the facts was taken by the district judge; but, upon the facts as we deem them established by the record, we agree with his conclusion that both vessels were in fault. The collision occurred in the North river, about midchannel, opposite the steamship's berth at the south side of pier 14. The tug was proceeding up the river, and at about midchannel, with two vessels in tow,—the first attached to the tug by a hawser of about 40 fathoms, and the second attached to the first by a hawser of about the same length. The vessels were making against the ebb tide a speed of about three knots an hour. It is customary for steamships the size of the St. Louis, when backing from their berths preparatory to a voyage at sea, to proceed well out in the middle of the river, in order to give vessels going up and down the river ample room to pass by while they are maneuvering to straighten on their course. The steamship had signaled by a long whistle her intention to back out, and those in charge of the tug discovered or should have discovered that she was backing out when the tug was at a distance of from twelve to fourteen hundred feet below the steamship's berth; but they made no change in the course or the speed of the tug. Those in charge of the steamship did not observe the tug and her tows until the tug had passed about three hundred feet beyond the line of the steamship's course. Thereupon the steamship's engines were put to go ahead, and her sternway checked. At about that time the tug altered her course to port. These maneuvers were too late to prevent a collision, and the steamship's stern struck the second vessel of the tow. Upon these facts the tug was plainly at fault, unless those navigating her were justified in assuming that the path of her tows was so far beyond the area of the steamship's maneuvers as to preclude risk of collision. It was seven or eight minutes after the steamship commenced to back out before the collision. The tug had in the meantime ample room to maneuver as might be necessary to protect her tows from collision. A moderate change of course to port would have obviated all risk of collision, but the tug, though having the steamship on her starboard bow, did not make any change of course until it was too late. The court below evidently did not believe the testimony for the tug that she and her tows were considerably to the west of the midchannel. If that had been the fact, those navigating the tug would have had a right to rely upon the steamship's conforming to the usage until the contrary became apparent. We are satisfied that was not the fact, and, although the steamship was culpable in not observing more carefully the movements of the tug, there would not have been a collision if the tug had properly conformed her movements to the situation.

The judgment is affirmed, with interest and costs.